EUCLIDE DANSEREAU *vs.* MICHAEL J. HOULIHAN.

Hampshire.    November 12, 1936. — December 29, 1936.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Contract*, Validity.    *Public Policy.*

An agreement to obtain a common victualler's license in a town was not as a matter of law illegal and void as against public policy even though it was accompanied by declarations of the promisor that "I know the selectmen," that they "were friends and they would give the license," and that he had a "pull and everything to get" the license.

CONTRACT. Writ in the Superior Court dated April 7, 1926.

The action was tried before *Leary*, J. There was a verdict for the defendant on the first count of the declaration, and a verdict for the plaintiff on the second count in the sum of $1,550. The defendant alleged exceptions.

*J. T. Storrs*, for the defendant, submitted a brief.

*J. A. Cohen*, for the plaintiff.

PIERCE, J.  This is an action of contract in two counts.
The first count as amended is for an alleged breach of con-
tract to sell to the plaintiff a lunch cart, with the guaranty
by the defendant, contained in the contract, that he would
obtain from the selectmen of the town of Warren, Massa-
chusetts, for the plaintiff, a common victualler's license.  It
was alleged that the contract further provided that, if after
the plaintiff went into business the business proved unsat-
isfactory, the defendant would return to the plaintiff all
moneys expended by him "on account of the same."  The
second count as amended is for money paid and expended
"and debts incurred for the benefit of and to the use of
the defendant."

All the evidence material to the defendant's exceptions
appears in the bill of exceptions, and warranted the jury in
finding facts, in substance, as follows:  In the fall of 1925,
the defendant owned a lunch cart, in Warren.  He agreed
to sell it to the plaintiff for $1,500, of which $1,000 was to
be paid in cash and the balance was to be paid in one year,
without interest.  The plaintiff was to remove the lunch
cart to West Warren, and set it up there.  On December 5,
1925, the plaintiff deposited a check in the office of one
Storrs of Ware, Massachusetts, in the sum of $1,000, pay-
able to the order of the defendant.  This check was never
cashed by the defendant and the amount thereof has never
been paid to the defendant.  The testimony of the plaintiff
tended to show that he left the check at the office of said
Storrs until the defendant should obtain for him a vict-
ualler's license to run the lunch cart.  Testimony of the
defendant tended to show that the check was left at the
office of said Storrs until the plaintiff should notify him
that there were sufficient funds in the bank upon which
the check was drawn to meet the check.  On March 7, 1926,
the plaintiff withdrew all his funds from said bank before
the defendant was notified that he could cash the check.

On January 26, 1926, a common victualler's license was
issued by the town of Warren to the plaintiff, which ex-
pired by law on April 30, 1926.  When the license was
delivered, the selectman delivering it made the statement

that he would not be on the next board of selectmen and that the plaintiff would not have any further license if that selectman did not get on. The plaintiff objected that this license was not what was required by the agreement between the parties, but upon the promise of the defendant to reimburse him for all expenses in removing and preparing the cart for operation if a further license for one year was not thereafter secured, the plaintiff expended money in removing, setting up and operating the lunch cart in West Warren. He did business therein until March 15, 1926, when he abandoned the cart (according to the testimony of the defendant) or was ejected therefrom by the defendant (according to the testimony of the plaintiff).

On December 5, 1925, at the office of Storrs, the plaintiff said to the defendant, "I want it on the papers to put down I had the license guaranteed." Respecting said demand he testified, on cross-examination, that the defendant said, "I know the selectmen. I can get it. If I can get the lease, that's all that is bothering me. I'll guarantee you will get the license"; and that he also said that they were friends and they would give the license. The testimony of the plaintiff tended to show, and warranted the jury in finding, that, when the defendant was informed by the plaintiff that the selectman, who delivered the license to him in January, 1926, said, "If I don't get on, you will get no further license," the defendant said to the plaintiff, "We will wait until after election and see who gets in"; and that when the selectman was not reëlected the defendant said, "It looks bad for our license. I'll get it just the same." The plaintiff testified that "The understanding was to get me a license, that he had the pull and everything to get me a license," and that the defendant said, "I got some friends and I can get the license." There was evidence for the plaintiff that the agreement between the parties required that the defendant should get him a license to the plaintiff's satisfaction, one that he could renew; that the license would be at least for a year; and that the license obtained in January, 1926, was unsatisfactory to the plaintiff. There was further evidence for the plaintiff that, as a part of the agreement,

the defendant was to reimburse the plaintiff for all moneys expended in removing and setting up the cart, if the defendant should be unable to procure the license required by the agreement, as above described; and that the plaintiff had expended $1,550, or more, in removing and setting up the cart.

At the close of the evidence the defendant requested the judge to rule as follows: "1. An agreement to obtain a common victualler's license is opposed to public policy, therefore, illegal and void. 2. To rule as a matter of law that the agreement to obtain a common victualler's license is against public policy and illegal and the plaintiff being a party to such an illegal agreement cannot recover." The only exceptions, shown by the record to have been saved by the defendant, are to the refusal to give these requests. The instructions given the jury in respect to the requested rulings are not printed in the record. There is nothing, therefore, to show that the subject was not properly dealt with in the instructions as given, nor to show that the defendant was prejudiced by the denial of his requests.

Passing the plaintiff's contention that the exceptions should be dismissed on this ground alone, we assume that the agreement to "obtain a common victualler's license" contemplated the obtainment of such a license from public officers, authorized, by G. L. (Ter. Ed.) c. 140, § 2, to grant such licenses, with the provision that "This section shall not require the licensing authorities to grant either of said licenses [innholders or common victuallers] if, in their opinion, the public good does not require it." It is well settled that the defendant had a right to urge before the board of selectmen either in person or by counsel, or by those interested in his behalf, the granting of a common victualler's license, in the absence of improper influence or practices upon the members of the licensing board. *Adams* v. *East Boston Co.* 236 Mass. 121, 128. *Reuter* v. *Ballard,* 267 Mass. 557. Disregarding the fact that the jury might find that the only testimony on which the defendant can rely, in support of his answer of illegality in the agreement to get the plaintiff a common victualler's license, grew out of a conversation between the plaintiff and the defendant,

after the making of the agreement in the fall of 1925, and at the time a temporary license was issued in January, 1926, we think that the declarations of the defendant, "I know the selectmen. I guarantee you will get the license"; that the board of selectmen "were friends and they would give the license"; and that he had a "pull and everything to get" a license for the plaintiff, did not warrant a ruling that the agreement to obtain a common victualler's license was against public policy and illegal, as stated in the defendant's request numbered 2. Upon consideration of all the evidence as shown in the record, we are of opinion that the judge could not have ruled rightly as requested by the defendant.

*Exceptions overruled.*